UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------- x

LGN INTERNATIONAL, LLC, and,
PRUDENT INVESTIMENTOS LTDA,

                                  No. 20-cv-3185-LGS

                Plaintiffs,

      - against -

HYLAN ASSET MANAGEMENT, LLC,
ANDREW SHAEVEL,
BAHAMAS MARKETING GROUP,
JOEL TUCKER,
SQ CAPITAL, LLC,
JT HOLDINGS, INC.,
HPD LLC,
HIRSCH MOHINDRA, and
MAINBROOK ASSET PARTNERS I, LLC,

                Defendants.
-------------------------------------------------------------------------- x

### MEMORANDUM OF LAW IN SUPPORT OF
### DEFENDANTS HYLAN ASSET MANAGEMENT, LLC, ANDREW SHAEVEL,
### AND MAINBROOK ASSET PARTNERS I, LLC'S
### MOTION TO DISMISS PURSUANT TO FED. R. CIV. PRO. 12(b)(3) & 12(b)(6)

*LIPPES MATHIAS WEXLER FRIEDMAN LLP*
Dennis C. Vacco, Esq.
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202
(716) 853-5100

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ...................................................................................................ii

PRELIMINARY STATEMENT ............................................................................................1

FACTUAL BACKGROUND ................................................................................................2

STANDARD OF REVIEW ...................................................................................................5

ARGUMENT ........................................................................................................................7

I. The Southern District of New York is the Improper Venue....................................................7

   A.  Plaintiffs cannot establish venue under 28 U.S.C. § 1391(b)(2)
      [Venue generally]...........................................................................................7

   B.  Plaintiffs cannot establish venue under 18 U.S.C. § 1965(a)
      [RICO Venue]................................................................................................9

   C.  Plaintiffs fail to allege or establish venue for the breach of contract claims. .................10

   D.  The Court should dismiss, rather than transfer this case ...................................11

II. Plaintiffs Fail to State a Claim upon which Relief can be Granted.........................................11

   A. Plaintiffs fail to establish an enterprise or pattern of racketeering activity ....................12

       i.       Plaintiffs fail to establish an enterprise......................................................13

       ii.     Plaintiffs fail to establish a pattern of racketeering activity .......................16

       iii.    Plaintiffs have failed to establish an enterprise or pattern of racketeering
             activity involving Mainbrook specifically ..................................................19

   B.  Plaintiff's second Cause of action in particular is implausible ......................................20

   C.  Plaintiff's third cause of action must also fail..............................................................20

   D. This Court should decline to retain supplemental jurisdiction over the
      breach of contract claims. ..............................................................................21

CONCLUSION.....................................................................................................................22

i

**TABLE OF AUTHORITIES**

**Federal Cases**                                                           Page

*Ambac Assurance Corp v. Adelanto Pub. Util. Auth.,*
696 F. Supp. 2d 396 (S.D.N.Y. 2010)................................................................5

*Anctil v. Ally Financial, Inc.*
998 F. Supp.2d 127 (S.D.N.Y. 2014)...............................................................17

*Ashcroft v. Iqbal*
556 U.S. 662 (2009).................................................................................5, 6

*Azurite Corp. v. Amster & Co.,*
730 F. Supp. 571 (S.D.N.Y. 1990)..................................................................20

*Basile v. Walt Disney Co.,*
717 F. Supp. 2d 381 (S.D.N.Y. 2010) ..........................................................5, 10

*Bell Atl. Corp v. Twombly*
550 U.S. 544 (2007)...........................................................................5, 15, 20

*Blass v. Capital Int'l Sec. Grp.,*
No. 99-CV-5738 (FB), 2001 WL 301137 (E.D.N.Y. Mar. 23, 2001). ..........................5

*Blakely v. Lew,*
607 F. App'x 15 (E.D.N.Y. Mar. 23, 2001).......................................................11

*Boneta v. Rolex Watch USA, Inc.,*
F. Supp. 3d 354 (S.D.N.Y 2017).....................................................................17

*Boyle v. United States,*
556 U.S. 938, 129 S.Ct. 2237, 173 L.Ed.2d 1265 (2009)......................................13

*Bremen v. Zapata Off–Shore Co.,*
407 U.S. 1 (1972).......................................................................................10

*Carnegie-Mellon Univ. v. Cohill,*
484 U.S. 343 (1988)....................................................................................21

*Coface v. Optique Du Monde, Ltd.,*
521 F.Supp. 500 (S.D.N.Y.1980).....................................................................10

*Continental Fin. Co. v. Ledwith,*
No. 08 Civ. 7272, 2009 WL 1748875 (S.D.N.Y. 2009) ........................................13

*Correspondent Servs. Corp. v. First Equities Corp. of Fla.,*
338 F.3d 119 (2d Cir. 2003).................................................................................................21

*Corso v. Franz*
No. 16CV2384FBSMG
2018 WL 1513639 (E.D.N.Y. Mar. 27, 2018)..........................................................................9

*Crawford v. Franklin Credit Mgmt. Corp.,*
758 F.3d 473 (2d Cir. 2014).................................................................................................17

*Cruz v. FXDirectDealer, LLC,*
720 F.3d 115 (2d Cir. 2013)................................................................................................ 13

*Cuyahoga Equip. Corp. v. United States,*
980 F.2d 110 (2d Cir.1992)..................................................................................................11

*D. Penguin Bros. v. City Nat. Bank,*
587 F. App'x 663 (2d Cir. 2014) .................................................................................... 13, 15

*Daniel v. Am. Bd. of Emergency Med.,*
988 F. Supp. 127 (W.D.N.Y. 1997) ........................................................................................9

*Daniel v. Am. Bd. of Emergency Med.*
428 F.3d 408 (2d Cir. 2005)........................................................................................... 7, 8, 9

*DeFalco v. Bernas,*
244 F.3d 286 (2d Cir. 2001).................................................................................................12

*Democratic Nat'l Comm. v. Russian Fed'n,*
392 F. Supp. 3d 410 (S.D.N.Y. 2019)............................................................................14, 19, 20

*Faber v. Metro. Life Ins., Co.*
658 F. 3d 98 (2d Cir 2011)......................................................................................................6

*Gas Reclamation, Inc. Securities Litigation*
659 F.Supp. 493 (S.D.N.Y. 1987)........................................................................................20

*Gates v. Wilskinson*
No. 01 CIV.3145 GBD, 2003 WL 21297296 (S.D.N.Y. 2003)......................................................9

*Gulf Ins. Co. v. Glasbrenner*
417 F. 3d 353 (2d Cir. 2005)............................................................................................7, 8

*H.J. Inc. v. Nw. Bell Tel. Co.,*
492 U.S. 229 (1989)...........................................................................................................16

*Hecht v. Commerce Clearing House, Inc.,*
897 F.2d 21 (2d Cir.1990)........................................................................................12

*Kondaur Capital Corp. v. Cajuste,*
No. 849 F. Supp 2d 363 (E.D.N.Y. 2012) ...............................................................6

*L-7 Designs, Inc. v. Old Navy, LLC*
647 F. 3d 419 (2d Cir 2011)......................................................................................6

*Landy v. Heller, White & Co.,*
783 F. Supp. 125 (S.D.N.Y. 1991)..........................................................................19

*Lexington Inv. Co. v. Sw. Stainless, Inc.,*
697 F. Supp. 139 (S.D.N.Y. 1988)..........................................................................10

*Marcus v. AT &T Corp.*
138 F.3d 46 (2d Cir. 1998).......................................................................................21

*Mills v. Polar Molecular Corp.,*
12 F.3d 1170 (2d Cir. 1993).....................................................................................17

*Minnette v. Time Warner*
997 F.2d 1023 (2d Cir. 1993)....................................................................................11

*Moore v. PaineWebber, Inc.,*
189 F.3d 165 (2d Cir. 1999).....................................................................................17

*Nat'l Grp. for Commc'ns and Computs. Ltd. v. Lucent Techs. Inc.,*
420 F. Supp. 2d 253 (S.D.N.Y. 2006)......................................................................20

*Novak v. Overture Servs., Inc.,*
309 F. Supp. 2d 446 (E.D.N.Y. 2004) .....................................................................10

*Polycast Technology Corp. v. Uniroyal, Inc.,*
728 F.Supp. 926 (S.D.N.Y.1989).............................................................................16

*Purchase Real Estate Grp. v. Jones,*
No. 05-cv-10859, 2010 WL 3377504 (S.D.N.Y. 2010) ..........................................14

*Quirk v. Gilsenan,*
No. 94 CIV. 3446 (JSM) 1994 WL 537137 (S.D.N.Y. 1994) ...................................7

*Reich v. Lopez,*
858 F.3d 55 (2d Cir. 2017)........................................................................................17

*Reves v. Ernst & Young*
507 U.S. 170 (1993).................................................................................................19

*Rolon v. Henneman*
517 F.3d 140 (2d Cir. 2008)........................................................................................6

*Sedima, S.P.R.L. v. Imrex Co.,*
473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)...............................................12

*Silverman v. Household Fin. Realty Corp.*
*N.Y.*, No. 12-CV-3559, 2013 WL 4039381 (E.D.N.Y. 2013).........................................6

*Soltron Inc. v. McAngus,*
No. 86 cv 486, 1987 WL 12832 (S.D.N.Y. 1987) ..........................................................9

*Spool v. World Child Int'l Adoption Agency*
520 F.3d 178 (2d Cir. 2008)........................................................................................17

*Town of Mamakating, N.Y. v. Lamm*
No. 15-cv-2865, 2015 WL 5311265 aff'd, 651 F.App'X 51 (2d Cir. 2016) ................14

*United States v. Cain,*
671 F.3d 271 (2d Cir. 2012).......................................................................................14

*United States v. Turkette,*
452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981)...............................................13

*Van Schaick v. Church of Scientology of California, Inc.,*
535 F. Supp. 1125 (D. Mass. 1982) ..............................................................................9

*Weathers v. Millbrook Cent. Sch. Dist.,*
486 F. Supp. 2d 273 (S.D.N.Y. 2007)............................................................................2

**Federal Statutes** <u>Page</u>

18 U.S.C. § 157 ...........................................................................................................4

18 U.S.C. § 1961 (1) (B) .........................................................................................16

18 U.S.C. § 1962 .......................................................................................................1
§ 1962(a) ..........................................................................................................12, 20
§ 1962(c) ..........................................................................................................12, 19
§ 1962(d) ..................................................................................................................12

18 U.S.C. § 1965(a) …………………………………………………………1, 7, 9, 10

18 U.S.C. § 2314 .......................................................................................................4

18 U.S.C. § 7201 .......................................................................................................4

28 U.S.C. § 1391 (b) (2) .................................................................................1, 7, 8, 5

28 U.S.C. § 1367 (a) .................................................................................................2
§ 1367 (b).................................................................................................................2
§ 1367 (c) 3 ........................................................................................................2, 21

28 U.S.C. § 1404(a) ................................................................................................11

Fed. R. Civ. P. Rule 8 (a) (2)).................................................................................6

Fed. R. Civ. P. Rule 12(b)(6) ........................................................................1, 2, 11

## PRELIMINARY STATEMENT

On September 17, 2020, Plaintiffs LGN International, LLC (LGN) and Prudent

Investimentos LTDA (Prudent) filed an Amended Complaint (Dkt. 39) in U.S. District Court,

Southern District of New York, against, among other defendants, Hylan Asset Management,

LLC (Hylan), Andrew Shaevel, and Mainbrook Asset Partners I, LLC (Mainbrook) (hereinafter

collectively "Moving Defendants"), generally alleging that the Moving Defendants participated

in the operation of an unlawful enterprise in violation of the Racketeer Influenced and Corrupt

Organizations Act (RICO), 18 U.S.C. §§ 1962 and breached contracts by marketing and selling

"phantom debt." *See* Dkt. 39, ¶¶ 37-49, 62-68.

Paragraph 17 of the Amended Complaint alleges that "[v]enue is … proper for the claims

arising under RICO pursuant to 18 U.S.C. § 1965(a) because *a substantial part of the events*

*giving rise to the claims occurred in New York, New York*." (emphasis added).[1] This allegation

is false.

The Moving Defendants hereby move to dismiss the Amended Complaint under Fed. R.

Civ. Pro. 12(b)(3) for improper venue.  The allegations in the Amended Complaint fail to

articulate how "a substantial amount" of the events or omissions giving rise to Plaintiffs' claims

occurred in this judicial district. *See* 28 U.S.C. § 1391(b)(2).  Moreover, the allegations in the

Amended Complaint fail to show that any defendant, including Moving Defendants, resides, is

located, has an agent, or "transacts his affairs" in the Southern District of New York. *See* 18

U.S.C. § 1965(a).  Lastly, within the agreements that are the subject of causes of action four and

---

[1] Plaintiffs cite to 18 U.S.C. § 1965(a) [RICO Venue and process] but quote language from the general venue provision 28 U.S.C. § 1391(b)(2).  Of note, the Amended Complaint is silent as to how the Southern District of New York is the proper venue for Plaintiffs' breach of contract claims.

five, Plaintiffs agreed that all disputes arising from the agreements shall be resolved in the Western District of New York, not Southern. Therefore, the Moving Defendants respectfully request that this Court dismiss the Amended Complaint in its entirety as Plaintiffs have filed this action in the improper venue.

Furthermore, the Moving Defendants hereby move to dismiss the entirety of the Amended Complaint for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.Pro. 12(b)(6). For causes of action one, two, and three (the RICO causes of action), Plaintiffs fail to establish the existence of an enterprise as well as a pattern of racketeering activity. For cause of action two specifically, the Amended Complaint also fails to allege how proceeds from the alleged racketeering activity were reinvested or how that *reinvestment* injured Plaintiffs. And once the RICO causes of action are dismissed, this Court lacks supplemental jurisdiction over causes of action four and five under 28 U.S.C. § 1367(a).[2] *See* 28 U.S.C. § 1367(c)(3).

## FACTUAL BACKGROUND

**Venue.** The Amended Complaint is devoid of specific allegations of events or omissions with any nexus to the Southern District of New York. Rather, in conclusory fashion, the Amended Complaint first references the Southern District by asserting, "Hylan transacts or has transacted business in this district …" but provides zero factual support for the assertion. Dkt. 39, ¶6. Nor could it, as the Moving Defendants do not transact business in the Southern District of New York. *See* Exhibit 1, Declaration of Defendant Andrew Shaevel, ¶ 3.

---

[2] The Amended Complaint erroneously cites 28 U.S.C. § 1367(b). *See* Dkt. 39, ¶16.

Notably, the Amended Complaint also fails to tie any other defendant to the Southern District.  Indeed, the Amended Complaint does not allege that any defendant resides, is located, is registered, or has an agent in the Southern District of New York:

- Defendant Hylan has a registered address in Amherst, New York, which is indisputably located within the Western District of New York.  Dkt. 39, ¶6.

- Defendant Andrew Shaevel resides in Amherst, New York, which is indisputably located within the Western District of New York. Dkt. 39, ¶7.

- Defendant Bahamas Marketing Group, LLC is a corporation organized in Kansas with a Kansas address. Dkt. 39, ¶8.

- Defendant Joel Tucker is a resident of Kansas. Dkt. 39, ¶9.

- Defendant SQ Capital, LLC a limited liability company organized in Missouri with a Kansas address. Dkt. 39, ¶10.

- Defendant JT Holdings, Inc. is a Kansas corporation with a Kansas address. Dkt. 39, ¶11.

- Defendant HPD LLC is a Wyoming limited liability company with a Wyoming address. Dkt. 39, ¶12.

- Defendant Hirsh Mohindra is a resident of Illinois. Dkt. 39, ¶13.

- Defendant Worldwide Processing Group, LLC has a registered address in Hamburg, New York, which is indisputably located within the Western District of New York. Dkt. 39, ¶14.

- Defendant Mainbrook is a Delaware limited liability company with a Delaware address. Dkt. 39, ¶15.

In an effort to remedy their original deficiencies (*see* Dkt. 4), Plaintiffs now allege for the first time in the Amended Complaint that "Plaintiff LGN maintained their place of business at … NY NY [sic] at the time of occurrence of the events giving rise to these claims[.]" Dkt. 39, ¶17. However, as evinced by Mr. Shaevel's affidavit and accompanying Exhibit 2, Plaintiffs' claim that LGN maintained its place of business in Manhattan is blatantly false. *See* Exhibit 1, ¶7.  And even if Plaintiffs' allegation regarding LGN's place of business was true (which it isn't), Plaintiffs fail to connect with any specificity any of the alleged events giving rise to these claims to LGN's alleged place of business in New York, New York.

Significantly, paragraph 11(k) of the Participation Agreement dated November 27, 2015 (*see* Dkt. 39, ¶66) and paragraph 10(k) of the Participation Agreement dated May 26, 2016 (*see* Dkt. 39, ¶62) provide:

> The Parties [including Plaintiffs] hereby agree that all disputes arising out of or relating to this Agreement shall be resolved in the state or federal courts located in the State of New York, *County of Erie*, and the Parties hereby consent to the jurisdiction of such courts in connection with *any* action or proceeding initiated concerning or arising from this Agreement. (emphasis added).

*See* Exhibit 1, Declaration of Defendant Andrew Shaevel, ¶¶ 8-9.

Erie County is indisputably located in the Western District of New York.

**Defendant Joel Tucker Plea Agreement.**  On July 16, 2020, Defendant Joel Tucker signed the attached Plea Agreement (Exhibit 3) and pleaded guilty to a violation of 18 U.S.C. § 2314 [Interstate Transportation of Stolen Money], 18 U.S.C. § 157 [Bankruptcy Fraud], and 18 U.S.C. §7201 [Tax Evasion] in United States District Court, Western District of Missouri. Within the Factual Basis of the Plea Agreement (Exhibit 3 at 2), Defendant Tucker admits as follows:

> From 2014 to 2016, Joel Tucker, operating under multiple businesses and business bank accounts, engaged in two related schemes to defraud:  a sale of

fraudulent debt scheme and a bankruptcy fraud scheme.  In the sale of fraudulent debt scheme, *Tucker defrauded third party debt collectors* and millions of individuals listed as debtors through the sale of falsified debt portfolios.  These portfolios were false in that Tucker did not have chain of title to the debt, the loans were not necessarily true debts, and the dates, amounts, and lenders were inaccurate and in some cases fictional … Tucker used the companies … *JT Holdings, Inc.* … and *SQ Capital LLC* to sell the debt. (emphasis added).

Moving Defendants are examples of defrauded third party debt collectors.

## STANDARD OF REVIEW

**Improper Venue.**  Where, as here, a timely objection is made to venue, the **plaintiff bears the burden of establishing that venue is proper.** *See, e.g., Ambac Assurance Corp. v. Adelanto Pub. Util. Auth.*, 696 F. Supp. 2d 396, 399 (S.D.N.Y. 2010) ("[T]he burden of showing that venue in the forum district is proper falls on the plaintiff.") (internal citations omitted) (emphasis added).  "In a case involving multiple claims, the plaintiff must show that venue is proper *for each claim asserted …*." *See Basile v. Walt Disney Co.*, 717 F. Supp. 2d 381, 386 (S.D.N.Y. 2010) (emphasis added).  Although the relevant facts must be construed in light most favorable to the plaintiff, the Court may consider documents beyond the complaint or hold an evidentiary hearing to resolve disputed factual issues. *See, e.g., Blass v. Capital Int'l Sec. Grp.*, No. 99-CV-5738 (FB), 2001 WL 301137, at *2 (E.D.N.Y. Mar. 23, 2001).

**Failure to State a Claim upon which Relief can be Granted.**  The Supreme Court has made clear that "[t]o survive a motion to dismiss," a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers 'labels and conclusion' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly,* 550 U.S. at 555). "'[N]aked assertions' devoid of 'further factual enhancement'" likewise do not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 557*).*

As the Court noted in *Iqbal*, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusion." *Id., accord Faber v. Metro. Life Ins. Co.*, 658 F. 3d 98, 104 (2d Cir. 2011) (noting that courts are not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions") (quoting *Rolon v. Henneman,* 517 F. 3D 140, 149 (2d Cir. 2008) (Sotomayor J.)). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not adequate. *Iqbal,* 556 U.S. at 678; see also, *e.g.*, *Silverman v. Household Fin. Realty Corp. of N.Y.*, No. 12-CV-3559, 2013 WL 4039381, at *1 (E.D.N.Y. Aug. 5, 2013)  (noting that "a pleading that does nothing more than recite bare legal conclusions is insufficient to 'unlock the doors of discovery'") (quoting *Iqbal,* 556 U.S. at 678).

Deciding whether a complaint has satisfied the plausibility standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679. "Plausibility thus depends on a host of consideration: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." L-7 *Designs, Inc. v. Old Navy,* LLC, 647 F. 3d 419, 430 (2d Cir 2011) (citing *Iqbal,* 129 S. Ct. at 1947-52). Where the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint is subject to dismissal, for "the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a) (2)); see also, e.g., *Kondaur Capital Corp. v. Cajuste,* No. 849 F. Supp 2d 363, 366 (E.D.N.Y. 2012) (noting that "[b]ald contentions, unsupported characterizations, and legal conclusions are not well-pleaded allegations" (citation and internal quotation marks omitted)).

**ARGUMENT**

**I.     The Southern District of New York is the improper venue.**

The RICO venue provision, 18 U.S.C. § 1965(a), "is not exclusive, but rather supplements the general venue provisions." *Quirk v. Gilsenan*, No. 94 CIV. 3446 (JSM), 1994 WL 537137, at *3 n.1 (S.D.N.Y. Oct. 3, 1994).  Accordingly, Plaintiffs can attempt to establish proper venue here by satisfying the general venue provisions of 28 U.S.C. § 1391(b)(2) or 18 U.S.C. § 1965(a).  But Plaintiffs cannot satisfy either.

Critically, Plaintiffs have the burden to demonstrate that the Southern District is the proper venue for *all* causes of action.  The Southern District of New York is not the proper venue specifically for causes of action four and five, the breach of contract claims, because Plaintiffs previously agreed that the Western District of New York is the proper venue for all disputes arising from the subject agreements.

**A.  Plaintiffs cannot establish venue under 28 U.S.C. § 1391(b)(2) [Venue generally].**

As this Court is aware, 28 U.S.C. § 1391(b)(2) [Venue generally] provides, "[a] civil action may be brought in … (2) a judicial district in which a *substantial* part of the events or omissions giving rise to the claim occurred ...." (emphasis added).  When, as here, a plaintiff relies on § 1391(b)(2) to defeat a venue challenge, a two-part inquiry is appropriate:

> First, a court should identify the nature of the claims and the acts or omissions that the plaintiff alleges give rise to those claims. *See Gulf Ins. Co. v. Glasbrenner,* 417 F.3d at 357. Second, the court should determine whether a *substantial* part of those acts or omissions occurred in the district where suit was filed, that is, whether "significant events or omissions material to [those] claim[s] ... have occurred in the district in question." *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d Cir. 2005). (emphasis added).

The Amended Complaint does not allege that even a single alleged act or omission giving rise to the RICO or breach of contract claims occurred in the Southern District of New York.  As

evinced by Exhibit 1, the Declaration of Defendant Andrew Shaevel (hereinafter "Mr. Shaevel's Declaration"), Moving Defendants' business operations occur(red) within the Western District of New York, while Plaintiffs were in Florida or Brazil. *See* Dkt. 39, ¶¶ 4-5.  The paucity of allegations within the Amended Complaint even referencing the Southern District supports Mr. Shaevel's Declaration.

The Second Circuit has cautioned courts that the adjective "substantial" within § 1391(b)(2) is meaningful:  "[W]e caution district courts to take seriously the adjective 'substantial.'  We are required to construe the venue statute strictly.  That means for venue to be proper, *significant* events or omissions *material to the plaintiff's claim* must have occurred in the district in question …." *Gulf Ins. Co.*, 417 F.3d at 357 (emphasis added).  "When material acts or omissions within the forum bear a close nexus to the claims, they are properly deemed 'significant' and, thus, substantial, but when a close nexus is lacking, so too is the substantiality necessary to support venue." *Daniel,* 428 F.3d at 433 (emphasis added).

Here, a *close* nexus to the Southern District is blatantly absent, and therefore, so too the substantiality necessary to support venue.  The Amended Complaint first baldly asserts that "Hylan transacts or has transacted business in this district …." but fails to identify any specific, and more critically, "material" acts or omissions in the Southern District bearing a "close nexus" to Plaintiffs' claims.  Though the Amended Complaint now alleges that LGN maintained its business in Manhattan "at the time of occurrence of the events giving rise to these claims", Exhibit 2 demonstrates that this allegation is false, and moreover, the Amended Complaint fails to connect with any specificity any of the alleged events giving rise to these claims to LGN's alleged place of business in New York, New York.  The Amended Complaint does not even allege that Plaintiff LGN signed the subject participation agreement in the Southern District. *See*

8

Dkt. 39, ¶62.  Indeed, the Amended Complaint fails to specifically allege in which transactions the Defendants or Plaintiffs participated that have a close nexus to the Southern District because such transactions never occurred. *See* Exhibit 1.  And significantly, the Amended Complaint fails to allege that any other defendant, including Mainbrook, participated in *any* transactions with even an attenuated nexus to the Southern District.

Therefore, Plaintiffs fail to establish venue under 28 U.S.C. § 1391(b)(2).

**B.  Plaintiffs cannot establish venue under 18 U.S.C. § 1965(a) [RICO Venue].**

As this Court is aware, 18 U.S.C. § 1965(a) provides, "[a]ny civil action … under this chapter [96, the RICO chapter] against any person may be instituted in the district court of the United States for any district in which such person resides, is found, [3] has an agent, or transacts his affairs."  "The Supreme Court and lower courts have interpreted the statute to require, for proper venue, some amount of business continuity and certainly more than a few isolated and peripheral contacts with the particular judicial district." *Corso v. Franz*, No. 16CV2384FBSMG, 2018 WL 1513639, at *2 (E.D.N.Y. Mar. 27, 2018) (quoting *Daniel*, 988 F. Supp. At 257); *see also Gates v. Wilkinson*, No. 01 CIV.3145 GBD, 2003 WL 21297296, at *1 (S.D.N.Y. June 4, 2003) (citing *Daniel,* 988 F.Supp. at 257); *see also Soltron Inc. v. McAngus,* No. 86 cv 486, 1987 WL 12832, at *3 (S.D.N.Y. June 12, 1987) (assuming "transacting affairs" language of § 1965(a) synonymous with "transacting business," and finding that "[t]he term transaction of business means regularly conducting business of a substantial and continuous character within that district.")  Further, venue under § 1965(a) requires that a defendant transact his affairs in the district *at the time the complaint is filed. Gates*, 2003 WL 21297296, at *2 (holding that

---

[3] To be "found" in a district within the meaning of § 1965(a), a corporation must be present in the district by its officers and agents carrying on business of the corporation.   *Van Schaick v. Church of Scientology of California, Inc.*, D.C.Mass.1982, 535 F.Supp. 1125.

defendants' brokerage accounts within in the district were insufficient to establish substantial transactions for venue purposes).

As summarized in the fact section above, the Amended Complaint does not allege that a single defendant resides, is located in, has an agent, or regularly transacts affairs in the Southern District of New York.  As evinced by Exhibit 1, the Moving Defendants have little to no connection to the Southern District of New York, let alone business continuity of a substantial nature in the Southern District.  Consequently, Plaintiffs fail to establish venue under U.S.C. § 1965(a) as well.

**C.  Plaintiffs fail to allege or establish venue for the breach of contract claims.**

In a case of multiple claims, such as this case, proper venue must be established with respect to *each* cause of action asserted. *Basile*, 717 F. Supp. 2d at 386 (finding venue was not proper in Southern District of New York for malicious arrest and prosecution claims). Furthermore, "[i]t is well-settled that forum selection clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable or unjust under the circumstances." *Lexington Inv. Co. v. Sw. Stainless, Inc.*, 697 F. Supp. 139, 143 (S.D.N.Y. 1988) (citing *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)); *Novak v. Overture Servs., Inc.*, 309 F. Supp. 2d 446, 451 (E.D.N.Y. 2004) ("Forum selection clauses, such as the one at issue in the instant case, are regularly enforced.); *see also Coface v. Optique Du Monde, Ltd.*, S.D.N.Y.1980, 521 F.Supp. 500 (Provision of guaranty agreement whereby guarantors consented to jurisdiction of New York courts in any action arising out of or connected in any way with the agreement constituted a consent to both personal jurisdiction and venue).

Here, Plaintiffs failed to even allege that the Southern District of New York is the proper venue for Plaintiffs' breach of contract claims. *See* Dkt. 39, ¶17.  Nor could they.  The Southern

District is not the proper venue for Plaintiffs' breach of contract claims because the subject agreements include forum selection clauses in which Plaintiffs agreed that the Western District of New York is the proper venue for all disputes arising from the subject agreements.  Moreover, Plaintiffs fail to show how the enforcement of the forum selection is unreasonable or unjust under the circumstances.  Therefore, the Southern District of New York is the improper venue, specifically for the fourth and fifth causes of action, and this Court should dismiss the Amended Complaint accordingly.

### D.  The Court should dismiss, rather than transfer this case.

A district court's decision whether to dismiss or transfer a case filed in the improper venue "lies within the sound discretion of the district court." *Blakely v. Lew*, 607 F. App'x 15, 18 (2d Cir. 2015) (quoting *Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993).  Though this Court could exercise its wide latitude in transferring this case to a more convenient forum where venue is proper, such as the Western District of New York, pursuant to 28 U.S.C. § 1404(a) (s*ee Cuyahoga Equip. Corp. v. United States,* 980 F.2d 110, 116 (2d Cir.1992), dismissal is the more appropriate remedy given the insufficiency of the pleadings.  Indeed, given Plaintiffs' utter failure to state a claim upon which relief can be granted, as argued immediately below, this Court should exercise its sound discretion and dismiss this case.

### II.    Plaintiffs Fail to State a Claim upon which Relief can be Granted.

Each of Plaintiffs' causes of action fail to state a claim upon which relief can be granted, and this Court must dismiss the Amended Complaint in its entirety pursuant to Fed.R.Civ.Pro. 12(b)(6).  First, causes of action one, two, and three (the RICO causes of action) are implausible because Plaintiffs fail to establish the existence of an enterprise as well as a pattern of racketeering activity.  Notably, the Amended Complaint barely discusses Mainbrook at all, and

11

certainly does not sufficiently tie Mainbrook to the alleged enterprise or to a pattern of racketeering activity. Second, for cause of action two specifically, the Amended Complaint also fails to allege how proceeds from the alleged racketeering activity were reinvested or how that *reinvestment* injured Plaintiffs. Third, a RICO conspiracy claim cannot stand alone without its substantive counterparts. And lastly, once all of the RICO causes of action are dismissed, only the state law breach of contract claims will remain, for which this Court does not have original jurisdiction. Consequently, this Court must dismiss the Amended Complaint in its entirety.

## A.   Plaintiffs fail to establish an enterprise or pattern of racketeering activity.

In order to state a claim under § 1962(c) (*see* first cause of action), a plaintiff must allege "(1) conduct (2) of an enterprise (3) though a pattern (4) of racketeering activity." *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)). Similarly, § 1962(a) (*see* second cause of action) requires Plaintiff to establish the existence of an enterprise and a pattern of racketeering activity. *Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 23 n. 1 (2d Cir.1990) ("Section 1962(a) prohibits using income received from a 'pattern of racketeering activity' to acquire an interest in or establish an enterprise engaged in or affecting interstate commerce."). Section 1962(d) (see third cause of action) simply proscribes conspiring to violate subsection (a) or (c). *Id.*

Accordingly, both an enterprise and a pattern of racketeering activity are necessary elements of the first three causes of action in the present case. However, Plaintiffs' first, second, and third causes of action fail here because Plaintiffs have failed to plausibly allege that defendants were part of an enterprise or that Moving Defendants participated in racketeering activity.

### i.       Plaintiffs fail to establish an enterprise.

As a threshold matter, a claim of a RICO enterprise must be supported by information "regarding the hierarchy, organization, and activities of the alleged enterprise," to support the allegation that the enterprise is a functioning unit. *Continental Fin. Co. v. Ledwith*, No. 08 Civ. 7272, 2009 WL 1748875, at \*5 (S.D.N.Y. June 22, 2009).  Plaintiffs' Amended Complaint utterly fails to provide any information regarding the hierarchy, organization, or activities of the alleged enterprise therein, and should be dismissed on these grounds alone.

Instead, in conclusory fashion, Plaintiffs generally allege that defendants are an association-in-fact enterprise. Dkt. 39, ¶18, ¶73. An association-in-fact enterprise "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Boyle v. United States*, 556 U.S. 938, 945, 129 S.Ct. 2237, 173 L.Ed.2d 1265 (2009) (quoting *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981)).  An association-in-fact enterprise "must have at least three structural features: (1) a purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.* at 946, 129 S.Ct. 2237; *D. Penguin Bros. v. City Nat. Bank*, 587 F. App'x 663, 667-68 (2d Cir. 2014) ("[F]or an association of individuals to constitute an enterprise," the members of the association must "share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes." (quoting *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013))).

Plaintiffs have not plausibly alleged a common purpose or sufficient relationships to assert an organization that amounts to an association-in-fact enterprise.[4]   Rather, Plaintiffs allege in conclusory fashion that the defendants have committed a series of acts that, in sum, injured Plaintiffs - but do not allege how any of the defendants were working together.   Indeed, an objective reading of the Amended Complaint suggests each group of defendants had a separate goal. *See* Dkt. 39, ¶24 (grouping defendants Tucker, SQ Capital, JT Holdings, and HPD together as an enterprise that manufactured "phantom debt," but excluding all other defendants).   A plaintiff may not simply "string[ ] together ... various defendants and label[ ] them an enterprise." *Democratic Nat'l Comm.*, 392 F. Supp. 3d at 440 (quoting *Town of Mamakating, N.Y. v. Lamm,* No. 15-cv-2865, 2015 WL 5311265, at *9 (S.D.N.Y. Sept. 11, 2015), *aff'd*, 651 F.App'X 51 (2d Cir. 2016)).

Here, the Amended Complaint simply strings together a series of defendants without establishing through pleaded facts how these defendants formed an enterprise.   An objective reading of the Amended Complaint would suggest that the defendants were operating separately with independent goals.  *See Purchase Real Estate Grp. v. Jones*, No. 05-cv-10859, 2010 WL 3377504, at *6 (S.D.N.Y. Aug. 24, 2010) (stating that members of an association-in-fact enterprise must "share a common purpose to engage in a particular <u>fraudulent</u> course of conduct and work together to achieve such purposes" (quotation marks omitted)). Specifically, the Amended Complaint is lacking as to how the Moving Defendants were working other defendants to commit fraud.

---

[4] Notably, "the enterprise must have an existence separate and apart from the racketeering activity itself. *Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 439 (S.D.N.Y. 2019) (citing *United States v. Cain*, 671 F.3d 271, 289 n.7 (2d Cir. 2012) (A RICO enterprise "is an entity separate and apart from the pattern of activity in which it engages.").

To the contrary, the Amended Complaint suggests that Moving Defendants were victims of Tucker (*see* Dkt. 39, ¶21 ("Defendant Tucker … has allegedly marketed counterfeit debts as legitimate consumer debts …."); *see id.*, ¶38 ("[S]tarting no later than 2014, Hylan began *purchasing* phantom debt portfolios from entities controlled by Tucker…." (emphasis added)), and then alleges facts suggesting that Mr. Shaevel gradually learned of Tuckers wrongdoing, but was reassured by Mohindra along the way. *See* Dkt. 39, ¶43 ("Mohindra assured Shaevel that, 'Joel [Tucker] would not and is not frauding over these amounts'").  Indeed, Defendant Tucker's guilty plea in the Western District of Missouri confirms that Moving Defendants were defrauded victims of Tucker, not working with Tucker. *See* Exhibit 3 at 2.  *See e.g., D. Penguin Bros. Ltd.*, 587 Fed. Appx. at 668 (holding the plaintiff failed to establish an association-in-fact enterprise where there was no plausible basis to infer the defendants acted "on behalf of the enterprise as opposed to on behalf of [themselves] in their individual capacities, to advance their individual interest." (internal citations omitted)).  No reasonable interpretation of the allegations could suggest that all these defendants were working together to defraud Plaintiffs (*see* Dkt. 39, ¶62). To the contrary, the Amended Complaint actually details how the Moving Defendants learned of Tucker's fraud. *See* Dkt. 39, ¶43.

Further, despite Plaintiffs' conclusory allegation in paragraph 77, there was no common purpose among the defendants. Rather, within the first 94 paragraphs of the Amended Complaint, Plaintiffs allege a series of arm's-length transactions, and then allege legal conclusions in the causes of action thereafter.  *See Twombly,* 550 U.S. at 555 ("A pleading that offers 'labels and conclusion' or 'a formulaic recitation of the elements of a cause of action will not do."; *Id.* at 557 ("[N]aked assertions' devoid of 'further factual enhancement' likewise do not suffice.").

Consequently, Plaintiffs' first, second, and third causes of action are implausible and this Court must dismiss.

### ii.    Plaintiffs fail to establish a pattern of racketeering activity.

Moreover, the Amended Complaint fails to establish a pattern of racketeering activity. "Racketeering activity" encompasses, among other things, any act indictable for crimes enumerated under 18 U.S.C. § 1961(1)(B), which include, for purposes relevant to the present case, 18 U.S.C. § 1341 [mail fraud] and 18 U.S.C. § 1343 [wire fraud].  To allege a RICO violation, the plaintiff must plead at least two predicate acts, show that the predicate acts are related, and that they amount to, or pose a threat of, continuing criminal activity. *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). Predicate acts are "related" for RICO purposes when they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240, 109 S.Ct. 2893 (quotation marks omitted). Here, Plaintiffs assert that the Moving Defendants violated 18 U.S.C. § 1341 [mail fraud] and 18 U.S.C. § 1343 [wire fraud].[5]

To allege a violation of the wire or mail fraud statute, it is necessary to show that defendants formed a scheme or artifice to defraud, defendants used United States wires or mails or caused use of mails in furtherance of scheme, and defendants did so with specific intent to defraud.  *Polycast Technology Corp. v. Uniroyal, Inc*., 728 F.Supp. 926 (S.D.N.Y.1989). And importantly, where a civil RICO claim is predicated on acts of fraud, a plaintiff must comply

---

[5] Plaintiffs also allege that Defendant Worldwide Processing Group, LLC (Worldwide) committed extortion, but there are no specific extortion allegations pertaining to the Moving Defendants.  Moreover, the Amended Complaint fails to demonstrate how Worldwide's alleged extortion of consumers injured Plaintiffs, who were also debt collectors, not debtors.

with Fed. R. Civ. P. 9(b)'s requirement to plead with particularity. *See Anctil v. Ally Financial, Inc.*, 998 F.Supp.2d 127, 142 (S.D.N.Y. 2014) (citing *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 172–73 (2d Cir. 1999)); *see also Plount v. Am. Home Assurance Co.*, 668 F.Supp. 204, 206 (S.D.N.Y. 1987) ("[A]ll of the concerns that dictate that fraud be pleaded with particularity exist with even greater urgency in civil RICO actions.").   Specifically, "[a]llegations of predicate mail and wire fraud acts 'should state the contents of the communications, who was involved, ... where and when they took place, and ... explain why they were fraudulent.' " *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 185 (2d Cir. 2008) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993)).  "RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." *Reich v. Lopez,* 858 F.3d 55, 59 (2d Cir. 2017) (citing *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 489 (2d Cir. 2014).

Here, the Amended Complaint fails to allege any actions on the part of the Moving Defendants that amount to mail or wire fraud, and the Amended Complaint certainly does not plead the alleged fraud with particularity.  There are only two specific allegations, found in paragraph 81, relating to mailings or wires.  First, Plaintiffs reference an email from Mr. Shaevel to Defendant Mohindra in which Mr. Shaevel states, "There is a MAJOR problem with data on this file.  Either there was a data transformation error or there is major FRAUD with this file." Second, Plaintiffs discuss "an email in January 2016 from Hylan to Mohindra in which Shaevel was copied and which contained "an attachment listing 74 alleged debtors who had signed sworn affidavits denying that they owed the debts." *See Boneta v. Rolex Watch USA, Inc.*, 232 F.Supp.3d 354 (S.D.N.Y.2017) (Two communications between watch manufacturer's counsel

and United States Custom and Border Protection officials regarding gray market protection for manufacturer's products imported into United States from overseas were insufficient to establish pattern of racketeering activity required to support importer's RICO claim). Otherwise, Plaintiffs generally allege that Hylan sent and received emails "concerning debt portfolios which were being marketed by BMG." *See* Dkt. 39, ¶81.  But none of these electronic communications amount to wire fraud as Plaintiffs allege. *See* Dkt. 39, ¶82 ("Each such use of a wire communication … in connection with the described scheme constitutes a separate and distinct violation of the RICO statute ….").

Stated plainly, Plaintiffs simply do not establish *why* or *how* these electronic communications were fraudulent.  Plaintiffs seem to believe that simply sending emails about debt, without any fraudulent representations therein, sufficiently proves fraudulent intent, but Plaintiffs are sadly mistaken.  Indeed, the Amended Complaint fails to allege that the Moving Defendants used wires or mailings *in furtherance of the alleged scheme*.  Instead, the three aforementioned emails, if anything, show that Moving Defendants were the victims of Tucker's marketing and fraud and lacked specific intent to defraud anyone - not that Moving Defendants were a *part* of the alleged scheme.

Similarly, Plaintiffs allege in paragraph 85 that "Defendants used extortive threats in their collection practices" in a feeble effort to establish a predicate act.  But this cheap attempt to add Worldwide Processing Group LLC as a defendant to establish a predicate act of extortion too must fail.  Indeed, in paragraph 40, Plaintiffs admit that "Hylan does not collect on phantom portfolios directly." And even if Plaintiff did properly allege that the Moving Defendants were part of an enterprise with Worldwide Processing Group LLC (which they did not), it is unclear how any extortive practices employed by Worldwide injured Plaintiffs.

Therefore, Plaintiffs failure to allege and establish a pattern a racketeering activity also mandates dismissal.

### iii.   Plaintiffs have failed to establish an enterprise or pattern of racketeering activity involving Mainbrook specifically.

For Mainbrook specifically, the RICO claims are insufficiently pled because the Amended Complaint fails to allege that Mainbrook conducted the affairs of the alleged enterprise.  Under 18 U.S.C. § 1962(c), the plaintiff must show that each defendant "conduct[ed] or participate[d], directly or indirectly, in the conduct of [the] enterprise's affairs." *Democratic Nat'l Comm.*, 392 F. Supp. 3d at 440–41 (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 177, 179, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993) ("[T]he word 'participate' makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs[,] ... but some part in directing that enterprise's affairs is required.").  But the only allegations within the Amended Complaint pertaining to Mainbrook at all are found in paragraphs 66 through 68, which generally allege that Plaintiff Prudent and Mainbrook entered into a purchase and sale agreement in which Prudent purchased $200 Million in debt, which Plaintiffs allege contained "phantom debt".  No other paragraph within the Amended Complaint even mentions Mainbrook.

As this Court is aware, to state a claim for a violation of the RICO statute that prohibits conducting affairs of a RICO enterprise, a plaintiff must allege that a defendant, through commission of *two or more* acts constituting a pattern of racketeering activity, participated in an enterprise, activities of which affect interstate or foreign commerce.  *Landy v. Heller, White & Co.*, 783 F.Supp. 125, 131 (S.D.N.Y.1991). The Amended Complaint here generally fails to allege how Mainbrook participated in the alleged enterprise, and at most, alleges that Mainbrook participated in *one* activity – the execution of the receivables purchase and sale agreement (Dkt. 39, ¶¶66-68) – but does not allege how that activity involved a mailing or wire that crossed state

19

lines.  Indeed, the allegations against Mainbrook are flawed in every respect, and must be dismissed.

### B.   Plaintiff's second cause of action in particular is implausible.

In addition to failing to establish an enterprise and pattern of racketeering activity, the Amended Complaint lacks a single detail of how any defendant, including the Moving Defendants, used income derived from a racketeering activity to invest in the operation of any enterprise, as required by 18 U.S.C. § 1962(a).  Rather, the Amended Complaint simply reiterates the elements of the statute (*see* Dkt. 39, ¶99), namely § 1962(a), which *Twombly* specifically prohibits.

Particularly fatal, the Amended Complaint fails to allege how the alleged investment of proceeds from the alleged racketeering activity injured Plaintiffs. *See Azurite Corp. v. Amster & Co.*, 730 F. Supp. 571, 579 (S.D.N.Y. 1990) (quoting *In re Gas Reclamation, Inc. Securities Litigation*, 659 F.Supp. 493, 511 (S.D.N.Y.1987)) ("One who has sustained injury as a result of the investment may sue for a violation of section 1962(a).  By contrast, it cannot be said that one who has suffered injury by reason of the predicate acts of racketeering has thereby been injured by the investment of the proceeds.")  Accordingly, the Second Cause of Action is implausible, and this Court must dismiss the same.

### C.  Plaintiffs' third cause of action must also fail.

Plaintiffs also assert that each defendant entered into a RICO conspiracy. However, a RICO "conspiracy claim must be dismissed where the substantive RICO claim is deficient." *Democratic Nat'l Comm.*, 392 F. Supp. 3d at 446 (quoting *Nat'l Grp. for Commc'ns and Computs. Ltd. v. Lucent Techs. Inc.*, 420 F. Supp. 2d 253, 272 (S.D.N.Y. 2006)). Therefore, once

this Court dismisses the first and second causes of action, this Court must dismiss the conspiracy claim within the third cause of action, too.

### D.  This Court should decline to retain supplemental jurisdiction over the breach of contract claims.

Having failed to adequately plead any claim for relief under federal law, Plaintiffs' state-law breach of contract claims should be dismissed as well.  As a general rule, "where the federal claims are dismissed before trial, the state law claims should be dismissed as well."  *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998); *see also* 28 U.S.C. § 1367(c)(3) (District Court may dismiss claims as to which it had supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction").  In determining whether to exercise its discretion to retain supplemental jurisdiction, "the district court balances several factors including considerations of judicial economy, convenience, and fairness to litigants."  *Correspondent Servs. Corp. v. First Equities Corp. of Fla.*, 338 F.3d 119, 126 (2d Cir. 2003) (internal citation & quotation marks omitted).

Here, all of the factors weigh against retention of supplemental jurisdiction over the state law claims.  For starters, the case is in its infancy.  *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988) (elimination of federal claims at early stage is a powerful factor in favor of declining to exercise supplemental jurisdiction).  Discovery has not begun, and judicial resources have not yet been expended to resolve the substantial disputes that may arise as to discovery on the state law claims.  *See, e.g.*, *Weathers v. Millbrook Cent. Sch. Dist.*, 486 F. Supp. 2d 273, 276 (S.D.N.Y. 2007) (declining to retain supplemental jurisdiction where "significant document discovery remains to be completed").  And given the aforementioned forum selection clauses, the principle of fairness dictates that Plaintiffs refile their state law claims in Erie County.

For these reasons, the Court should decline to maintain supplemental jurisdiction over Plaintiffs' state-law claims, namely, the fourth and fifth causes of action alleging breach of contract.

## CONCLUSION

For these foregoing reasons, the Southern District of New York is an improper venue for this action.  Moreover, each of Plaintiffs' causes of action fail to state a claim upon which relief can be granted.  Accordingly, Moving Defendants respectfully request that this Court dismiss the Complaint in its entirety with prejudice.

Dated: Buffalo, New York
       November 12, 2020

                          Respectfully submitted,

                          LIPPES MATHIAS WEXLER FRIEDMAN LLP

                          */s/Dennis C. Vacco*
                          Dennis C. Vacco, Esq.
                          *Attorneys for Hylan Asset Management, LLC &*
                          *Mainbrook Asset Partners I, LLC*
                          50 Fountain Plaza, Suite 1700
                          Buffalo, New York 14202
                          T: (716) 853-5100
                          dvacco@lippes.com

22